# THE STATE EX REL. McCORMICK v. WINTON.

ATTORNEYS—MISCONDUCT OF.—Every court has inherent power to strike the name of an attorney from its roll for fraud or corruption in his professional character or employment, or violation of the obvious rules of common honesty. Although the offense charged be indictable and the accused have not been convicted or prosecuted thereon, the court will not on that account refuse to exercise its summary jurisdiction to disbar an attorney in a proper case.

PRACTICE—VERIFICATION.—When in the judgment of the court the answer to a charge against an attorney might subject him to a prosecution for a felony, the verification to such answer may be omitted.

JURISDICTION—EXTENT OF.—Upon a charge against an attorney for misconduct, although involving matter for which he might be indicted, the inquiry is directed to the truth of the accusation only so far as it affects his character for trustworthiness or want of integrity. The jurisdiction acts upon the officer, or the facts which show him unfit to hold such office, and is exercised for the protection of the court.

*Geo. H. Durham,* for plaintiff.

*Raleigh Stott and C. B. Bellinger,* for defendant.

By the Court, LORD, J.:

This is an information on the relation of Hugh McCormick, filed in this court, against F. D. Winton, asking for an order to show cause why he should not be removed from his office as an attorney of this state. The facts alleged are in substance of this character: In the year 1883, at a regular term of the circuit court for Clatsop county, the complainant, James Franklin, Wm. Bannister, James McCarty, Jas. Driscoll and Wm. Loyd were indicted by the grand jury of said county for the crime of kidnapping. As their attorney, the defendants so indicted employed the said Winton to de-

fend them, and paid him the full amount he demanded as his fee to make such defence.   Of the defendants indicted upon said charge, James Franklin was first put on trial, but the jury failing to agree, were discharged by the court. Upon this result, it is alleged that the said Winton "then well knowing that the said Franklin could not be again tried during that term of the court, but desiring to take advantage of his client and extort money from him and his friends, went in person to Mrs. B. Grant, in whose employment the said Franklin then was, and told her that if Franklin was tried again during that term he would surely be convicted, but that if she would give him three hundred dollars, he would see that the case was continued until the next term of said court; that he could influence the prosecuting attorney to continue the case."   The indictment against the other defendants, including the complainant, was not tried during the January term, but was continued until the August term of said court, 1883.   The information then proceeds as follows: "That immediately thereafter, and prior to the transactions hereinafter stated, the said Winton became possessed of information which satisfied him that the prosecuting attorney did not intend to prosecute the case against the said McCormick, but intended to dismiss the same, and in the month of —— 1883, the said Winton represented to the said McCormick and to one Mrs. Louise Collins, with whom he was engaged in business, that if they would pay him sufficient money, he could and would corrupt the prosecuting attorney and the prosecuting witnesses and cause said action to be dismissed, and that said McCormick's only safety was in getting such action dismissed; that he could corrupt the said witnesses and officer, and secure the dismissal of said action; and the said Winton

thereby induced the said McCormick and Mrs. Collins to pay to him the sum of nine hundred dollars for said purpose, although he well knew said action would be dismissed in any event, and knew that his said clients were ignorant of such fact, and that he only made such representations for the purpose of extorting money from said McCormick and Mrs. Collins," &c. By reason of the premises, it is further alleged that the said Winton has been guilty of wilful deceit and misconduct in his profession and of violating the confidence reposed in him by his clients.

An order having been granted to show cause, the said Winton appeared and answered. By consent, the case was referred to a referee to take the testimony and report the same to the court. At the time appointed for the hearing— the evidence and report of the referee having been submitted—it was suggested by counsel for the defendant that they desired to interpose an objection to the power or jurisdiction of the court to make the order upon the facts alleged, before proceeding to read the evidence and a trial upon the merits. Leave to raise the objection as if the same had been regularly taken by demurrer was conceded to be the legal right of the defendant, and granted. This objection is, that when a crime is charged against an attorney for which he may be indicted, the court will not entertain jurisdiction in such case, until he has been regularly convicted by a jury in a criminal proceeding; or conceding the right of the court to make the order to show cause, it will refuse to proceed, at least, when such charge is denied and not confessed by him. We are, therefore, to consider whether such a case has been presented by the facts alleged, or by the facts alleged and denied, as will authorize the court to

act—to exercise its summary power of suspension or disbarment.

Our code provides that an attorney may be removed or suspended by the supreme court for either of the following causes, arising after his admission to practice: 1. Upon his being convicted of any felony or misdemeanor involving moral turpitude, in either of which cases, the record of his conviction is conclusive evidence; 2. For a wilful disobedience or violation of the order of a court requiring him to do or forbear an act connected with or in the course of his profession; 3. For being guilty of any wilful deceit or misconduct in his profession; 4. For a wilful violation of section 1006, which among other things imposes upon an attorney the duty to employ for the purpose of maintaining the causes confided to him, such means only as are consistent with truth, and to maintain inviolate the confidence of his clients. (Code, sec. 1015.)

The proceeding here is upon the information of another than the court, or any of the judges thereof, and is verified by the oath of the party making the accusation; and in such case, unless it appear that the accused should be required to appear and answer the same, the accusation shall be dismissed at once. (Sections 1016, 1017, 1018.) At the time appointed in the order, the accused must appear and answer the accusation, unless, for sufficient cause, the court assign another day for that purpose; and if he do not appear, the court may proceed and determine the accusation in his absence. (Section 1019.) He may demur to the accusation for insufficiency or controvert it by answer. The demurrer and answer are required to be in writing, and the latter is to be verified by the oath of the accused in the same manner as a pleading in an action at law. (Section 1020.)

If the demurrer for insufficiency be not sustained, the accused shall answer forthwith. If he plead guilty, or refuse to answer the accusation, the court shall proceed to judgment of removal or suspension. If he controvert the matters charged, the court shall then, or at such time as it may appoint, proceed to try the accusation, and give a judgment of removal, suspension or acquittal, according to the law and the right of the case. (Sec. 1021.)

At common law, attorneys were, as now under the statute, officers of the court; and as such they were liable to be punished in a summary way, either by attachment or having their names struck out of the roll of attorneys, for any ill practice attended with fraud and corruption, and committed against the obvious rules of justice and common honesty. (Bacon's Abridg. "Attys." II.) This is an inherent power residing in the court without the aid of any statutory enactment. The exercise of the power may be, as it often is, regulated by statute, but the statute does not create it. Its existence is necessary and incidental to the court for its own protection, to secure the proper administration of justice, to maintain the prestige of the profession for integrity, to conserve the public good and to protect clients from malpractice attended with fraud and corruption. (*Ex parte Smith*, 28 Ind., 47; *Penobscot Bar* v. *Kemble*, 64 Me., 140; *Fletcher* v. *Dangerfield*, 20 Cal., 427; *In re Wooley*, 11 Bush [Ky.] 95.) It is, therefore, laid down by the text writers upon this subject as deducible from the practice and decisions of the courts in such cases, that a court has the inherent right to exercise this summary jurisdiction over its attorneys as officers of the court, to require and compel them to deal justly and honestly with their clients, and to punish them by fine and imprisonment

for contempts or misconduct in their office, and, in cases where the malpractice or misconduct in their professional capacity showed them to be unfit persons to practice the law, to strike their names from the roll. (1 Tidd's Practice, 89, [ed. 9]; Archibald's Practice, p. 148, Chitty's ed.)

The question which has presented the most difficulty, and out of which there has grown some difference of opinion, is where the facts charged against the attorney are indictable, but are in no wise connected with his professional employment—acts done in his private, but not in his professional capacity. In such cases, it has been held by some courts that, where the misconduct alleged, though done in his private capacity merely, and not in his official capacity, is of such gross character as to gravely affect his standing as an attorney, they will exercise the power of removal or disbarment. This seems to be an exception to the general rule as held by other courts, which confines the exercise of such summary jurisdiction over an attorney to cases where the misconduct was committed in his professional character, or was in some way, or in some matter, so connected with his professional character as to be the direct result of it. Courts adhering to this rule, when the misconduct alleged constitutes an indictable offense not growing out of, or in any way connected with his professional employment or duties, refuse to proceed in this summary manner, but leave the party injured to obtain relief by a prosecution in the proper court, or the matter to be prosecuted by a public officer upon whom the law devolves the duty of prosecuting criminal offenses. But there is no doubt much authority for extending the rule to misconduct for acts which are indictable and committed outside of the professional relation,

when the misconduct alleged against the attorney is so gross as to seriously impugn his standing and integrity.

In Ex parte Will, 107 U. S., 266, this whole subject is ably and exhaustively reviewed by Mr. Justice Bradley, and all the authorities bearing upon it, both English and American, critically reviewed and examined. The crime charged in that case was committed by the attorney in his private capacity as an individual, but it was perpetrated under such circumstances of outrage and open defiance of the laws, and in such utter disregard of the duties which the law imposed upon him as an officer of the court, sworn to uphold the laws and to assist in its proper ministration, that it was considered by the court to belong to that class of cases in which the court was authorized to exercise its summary powers, when the offence charged, though indictable, and not done in a professional capacity, gravely affected the character of the attorney, and showed him unfit to be entrusted with its high duties. The contention of the defendant was, that when a crime is charged against an attorney for which he may be indicted, and the truth of the charge is denied or not confessed by him, it cannot be made the ground of an application to strike his name from the roll until he has been regularly convicted by a jury in a criminal proceeding, when the act charged was not committed in his professional character. As a result of an examination of all the English authorities, Mr. Justice Bradley deduced this rule from them: "That an attorney will be struck off the roll if convicted of a felony, or if convicted of a misdemeanor involving want of integrity, even though the judgment be arrested or reversed for error; and also (without previous conviction) if he is guilty of gross misconduct in his profession, or of acts which, though not done in his professional capacity,

gravely affect his character as an attorney; but in the latter case, if the acts charged are indictable, and are fairly denied, the court will not proceed against him until he is convicted by a jury; and will in no case compel him to answer under oath to a charge for which he may be indicted." This rule, it is asserted, has been in the main adopted by the courts in this country, though special proceedings are provided for by statute in some of the states.

The learned judge then proceeds to review and cite the authorities in this country pro and con, and deduces this result: "That whilst it may be the general rule that a previous conviction should be had before striking an attorney off the roll for an indictable offense committed by him when not acting in his character of attorney, yet that rule is not an inexflexible one. Cases may occur in which such a requirement would result in allowing persons to practice as attorneys, who ought, on every ground of propriety and respect for the administration of the law, to be excluded from such practice." But in cases of this character, it is admitted that the power ought not to be exercised without great caution, and never except in clear cases of misconduct which affect the standing and character of the party as an attorney.

The case before us is not one committed outside of the professional relation and in the private capacity of the defendant, and, therefore, does not require of us any decision. or expression of opinion upon that aspect of the question. Our reference to this phase of the subject has been for the purpose of showing the extent to which the authorities have gone in the exercise of this summary jurisdiction, and the grounds upon which they have founded it, so as to make more·clear and evident the duty and authority of the court

to act in the matter which we are required to decide. It is not denied that the matter with which the defendant is charged, though an indictable offense, was committed in his professional employment. Taking the facts alleged as true, it was in fact in his capacity as an attorney, and employment as such, that he was enabled to effect the result of which the relator complains. For the purposes of this inquiry, all this is admitted. But it is contended that the matter charged, although done in his professional character, constitutes an indictable offense, and cannot be tried in this summary way, or at least the court will refuse to proceed in such cases when the charge is denied and not confessed. Upon the first part of this proposition, the contention is, that the authorities are uniform in holding that the court will in no case compel a defendant to answer under oath to a charge for which he may be indicted, whether committed in his professional or private character, but that under the provisions of the code referred to, the defendant is required to make a sworn answer, or in the event of a refusal the court may proceed to judgment of suspension or removal— a result which, it is claimed, is inconsistent with the theory of jurisdiction in such cases without previous conviction or confession, and which shows that the purpose of the proceeding, as mapped out by the code, was to confine the inquiry or jurisdiction of the court to such cases of misconduct as do not constitute indictable offenses.

It is a fundamental principle of law, engrafted in the constitution of the United States and in the constitutions of the different states of the union, that no man shall be required to criminate himself, or be held to answer for a crime, unless upon a presentment or indictment by a grand jury, and that the trial of all crimes, except in cases of im-

peachment, shall be by an impartial jury.  A court cannot
compel a defendant by his answer or otherwise to criminate
himself.  A proceeding by statute requiring an answer to
be sworn to which would produce this result would be
plainly unconstitutional and void, unless the court was in-
vested with some authority to dispense with this require-
ment.  The answer required to be verified by the oath of
the accused in a proceeding of this character is the same as
a pleading in an action at law.  It is governed by the same
rules and principles and is subject to the same limitations.
When, in the judgment of the court, an answer to an allega-
tion in any pleading, might subject the party answering to
a prosecution for a felony, the verification to such answer
may be omitted.  (Code, sec. 80.)  But without this, in
view of the constitutional inhibition, the court would be
authorized in such cases to dispense with such requirement.
All this becomes more evident, when the nature of the juris-
diction and the object of its exercise is understood and ap-
plied.  But waiving this, it is, however, strenuously in-
sisted that the court will refuse to proceed to try the matter
when the malpractice alleged involves an indictable offense,
and is denied and not confessed, upon the ground that the
only proper evidence which the court can receive of the com-
mission of such offense, is a record of conviction.  Or, in
other words, when the malpractice alleged is indictable and
denied, it cannot be made the ground of an application for
disbarment until there has been a regular conviction by a
jury in a criminal proceeding.  The vice of this argument
lies in the assumption that the court is trying and deter-
mining a criminal offense with all its attendant results.
Such is not the fact.  The power of the court is not exer-
cised for the purpose of reaching results which flow from

the exercise of criminal jurisdiction, but it is directed solely
to ascertaining whether, upon the facts alleged, although in-
volving indictable matter, there has been a breach of official
duty—misconduct in office.    When the accusation against an
attorney is for misconduct in his office, although involving
matter for which he may be indicted, the inquiry is directed
to the truth of the accusation only so far as it affects his
character for trustworthiness or want of integrity, leaving
the matter of the criminal charge to be prosecuted and pun-
ished by the courts constituted for that purpose.    The char-
acter of the judgment would seem to make this all the more
apparent.    It is not a criminal judgment convicting or ac-
quitting of a crime and carrying the consequences of such a
judgment, but a judgment of suspension or removal from
his office as an attorney.    This shows that the jurisdiction
acts upon the office, or upon the facts which show him unfit
to hold such office.    In none of the authorities is the pro-
ceeding recognized as one of punishment, but for the pur-
pose of protecting the court and excluding from a participa-
tion in its councils those of its officers who are shown to be
corrupt, dishonest or untrustworthy.    (*Ex parte* Wall,
*supra*.)  "It is not by way of punishment, said Lord Mans-
field, but the court in such cases exercise their discretion
whether a man, whom they have formerly admitted, is a
proper person to be continued on the roll or not."    (*Ex
parte* Brounsall, Cowp., 329.)    Legal knowledge and skill
are not the only requisites of an attorney, but they must be
conjoined with that ancient requirement of the law, integ-
rity of character.    Before admission to his office, as reg-
ulated by the code, he must prove by evidence satisfactory
to the court that he is a person of good moral character,
and show by an examination in open court that he possesses

the requisite learning and ability. When satisfied that he possesses these qualifications, the court administers to him an oath to support the constitution and laws of the United States and of this state, and to *faithfully* and *honestly* demean himself in office. Upon an order being entered reciting these facts, he receives his certificate of admission and becomes entitled to practice in all the courts of this state. The order of admission is the judgment of the court that he possesses these qualifications and is fit to be entrusted with the responsible duties of his office. It in effect certifies to the community that he is competent to advise in legal matters, or to conduct legal proceedings, and is of such "good moral character" as will be a pledge to those dealing with him professionally, of fidelity and honesty to their interests. And to this is added the sanction of his official oath, to be faithful, upright and honest in all the duties which may devolve upon him as an attorney. These duties often comprise grave responsibilities and interests of the highest conceivable character. Life, liberty, reputation and property are often intrusted to his care. It is indispensable that he be trustworthy, and of unswerving integrity of character in his official relations. As prerequsite to his admission, they must be enduring and ·distinctive traits of his character while he exercises the high prerogative of his office. A lapse from them, upon a proper showing, in his official conduct, is fatal to his right to be an attorney. Justice to the court, protection to the public, and the honor of his profession alike inexorably demand that he act with fidelity and honesty to the interests entrusted to his care. Whenever, therefore, it is made to appear to the satisfaction of the court that an attorney has been guilty of conduct or acts, committed inside or outside of his professional em-

ployment which show him to be utterly unfit to practice law and to participate in the official ministration of justice, the court will exercise its summary powers and disbar him. The nature and extent of the inquiry, when involving indictable offenses not committed in a professional capacity, and denied, although a matter upon which some difference of opinion exists, are not material considerations here. The case before us, and against the defendant, is for misconduct in his office, the particular facts of which as alleged, are admitted for the purposes of this hearing to have been committed in his professional employment. These facts show, to say the least, a gross violation of the confidence of his clients, and an utter want of fidelity and honesty to their interests. In cases of this character, where the malpractice or other misconduct is committed in his official capacity, although involving indictable matter, the authority of the court to exercise its summary powers of disbarment is sustained by an imposing array of judicial authority. "No question can be made," says Mr. Chief Justice Sharswood, "of the power of a court to strike a member from the roll for official misconduct in or out of court." (*Ex parte Sternman* v. *Hensel*, 95 Pa. St., 220; *Ex parte* Walls, 64 Mo., 461.) When a case is presented of malpractice against an attorney, attended with fraud and corruption, and committed against the obvious rules of justice and common honesty, it would be a scandal to the court, a reproach to the administration of justice, unjust to the public, and a grave wrong against an honorable profession whose members have preserved a high standard of professional ethics, and some of whom, by their learning and ability, have added lustre to the bar and earned an enduring fame in the annals of their country, to refuse to act, or to exercise its summary powers,

and thus continue him upon the roll, and hold him out to the world as a member of the bar worthy of confidence, and clothed with the prestige of its authority. There can be no doubt but that the office of attorney is ordinarily valuable to its possessor. It is often the source of great emolument to him. In the great majority of cases, however, it constitutes his only means of procuring a livelihood for himself and those dependent upon him for support, and to deprive him of it would be likely to leave him with blighted reputation and comparatively helpless to engage in other remunerative pursuits, thus entailing upon himself and family the wretchedness of want and poverty. In view of these grave consequences, it is of the highest consideration that the power be only exercised in a proper case, after a patient and careful examination of all the facts and upon the clearest legal proof, satisfying the court that his professional unworthiness is such that protection to the court, the public and the profession absolutely require his disbarment. Thus recognizing the responsibility of the duty which devolves upon us, we must hear this case.

The objection is overruled.