[Decided January 28, 1895.]

## EX PARTE COWING.
[ *State ex rel. Idleman* v. *Cowing,* 38 Pac. 1090.]

DISBARMENT OF ATTORNEY— JURY TRIAL.— On the question whether a court can disbar an attorney for the commission of an indictable offense, committed outside the line of his professional duties, without his having first been indicted and convicted, there is some conflict in the authorities; but the better rule seems to be that where the crime charged affects the general moral character of the attorney and his general fitness to practice his profession, and is admitted or clearly proven, the court may proceed in a

summary manner to disbar him. Where, however, the charge is of a single criminal act, committed in his private capacity, and any doubt of the party's guilt exists, a court should not proceed summarily, but should leave the case to be determined by a jury: *State* v. *Winton*, 11 Or. 461-463, cited.

This is a proceeding instituted by the state upon the relation of Cicero M. Idleman, John Catlin, Milton W. Smith, William R. Willis, and J. Couch Flanders, constituting the Grievance Committee of the Oregon State Bar Association, to disbar one Thomas F. Cowing, an attorney of this court residing in Oregon City, for a violation of the provisions of subdivision 1 of section 1031 of Hill's Code. The information states, in substance, that in July, eighteen hundred and ninety-two, the said Cowing was called as a witness in the trial of a criminal proceeding against C. M. Mead, J. A. Confer, and J. C. Mehan, then pending in the Circuit Court of the United States for the District of Oregon, and as such witness testified that prior to the first day of August, eighteen hundred and ninety, he entered into a contract and agreement with said Confer, Mead, and Mehan, by which it was understood and agreed that said parties should locate him upon a piece of government timber land in southern Oregon, he agreeing to make the application for the purchase of said land, and all necessary affidavits required by the land department, and that upon the completion of his purchase said Confer, Mead, and Mehan were to purchase or provide a purchaser for the said land from him for the sum of one thousand dollars; that in pursuance of this conspiracy he made an application on the first day of August, eighteen hundred and ninety, for the purchase of the southwest quarter of section four, township sixteen south of range one east, and made and filed the necessary affidavit required by the rules of the land department, in which, among many other things, he swore that he had personally examined the

land, and from his own personal knowledge knew that it was unfit for cultivation, and chiefly valuable for timber; and that he did not make said application to purchase on speculation, but in good faith to appropriate the land to his own exclusive use and benefit, and that he had not, directly or indirectly, made any agreement or contract with any person or persons whomsoever, by which the title he might acquire from the government of the United States should inure, in whole or in part, to the benefit of any person except himself; that he was familiar with the land laws of the United States, and made said affidavit with full knowledge that the statements therein contained were not true, and that he had not in fact personally inspected or examined said land before making said application, and was entirely ignorant thereof; that he had never been on the land, and knew nothing about it. Upon being cited to appear and answer the petition, the defendant filed an answer, in which he denies specifically all the allegations therein contained, and upon the issue thus joined the matter was referred to referees to take and report the testimony. Upon the coming in of the reports of the respective referees the case was argued and submitted by counsel.                    DISMISSED.

For relators there was a brief by *Messrs. John Catlin* and *J. Couch Flanders*, and an oral argument by *Mr. Geo. E. Chamberlain*, attorney-general, and *Mr. Catlin*.

For respondent there was a brief and an oral argument by *Mr. Ira Jones*, and an oral argment by *Mr. George S. Brownell*.

Opinion by MR. CHIEF JUSTICE BEAN.

From the testimony as reported it appears that on August first, eighteen hundred and ninety, Cowing filed

in the land office at Roseburg a duly verified application
to purchase the land referred to, containing, among other
statements, the following: ''I do not apply to purchase
the land on speculation, but in good faith, and to appro-
priate it to my own exclusive use and benefit; and that I
have not, directly or indirectly, made any agreement or
contract or in any way or manner with any person or per-
sons whomsoever, by which the title I might acquire from
the government of the United States may inure in whole
or in part to the benefit of any person except myself,"
and that he knew from his own personal knowledge the
land to be unfit for cultivation, and valuable chiefly for its
timber.   But there is not a scintilla of evidence, aside
from the alleged testimony of Cowing himself on the trial
of Confer, Mead, and Mehan, even tending to show that
such affidavit was false.   In fact, the testimony taken in
this proceeding, upon that point shows it to have been
true.   Cowing testified in his own behalf to that effect,
and so also did Mead and Mehan, and Confer was not
called as a witness.   It is a disputed fact, too, on the
record as to whether Cowing testified in the federal
court as alleged in the petition.   The witnesses for the
state all testify that, as they understood his testimony,
it was in effect as alleged, while about an equal number
for the defendant, including himself, are just as positive
that he did not so testify.   So far as the allegation that he
had personally examined the land before making applica-
tion is concerned, the testimony shows that while he did not
actually go upon the particular tract applied for, yet he
did go upon an adjoining elevation, where he could see the
land and its character, condition, and location, and, based
upon the information thus obtained, he made an affidavit
that the land was unfit for cultivation and valuable chiefly
for timber; and under the rulings of the land department,—
of which he had knowledge, and with which he was famil-

iar,—this is a sufficient examination, within the meaning of the law, and justifies the statements contained in the affidavit: *Grace* v. *Carpenter*, 14 Decisions of the Department of the Interior, 436. It thus necessarily appears that the position of the plaintiff is that Cowing should be disbarred for committing the crime of perjury, either in making the affidavit in the land office, or in testifying in the federal court as a witness; but in either case the crime was committed, if at all, in his private capacity, and not in the line of his professional duties or employment.

As to whether a court can disbar an attorney for the commission of an indictable offense outside of the line of his professional duties, without his first having been indicted and convicted, there is some conflict in the authorities. It is perhaps the better rule that where the crime charged affects the general moral character of the attorney and his general fitness to practice his profession, and is admitted or clearly proven, the court may proceed in a summary manner to disbar him; but when the charge is of a single criminal act, committed in his private capacity, and the evidence is conflicting, and any doubt of the party's guilt exists, no court should attempt to proceed summarily, but should leave the case to be determined by a jury: *Ex parte Wall*, 107 U. S. 265, 2 Sup. Ct. 569; *State* v. *Winton*, 11 Or. 456, 5 Pac. 337. We have here a case in which the evidence is conflicting, and there is certainly some doubt as to whether Cowing committed perjury, either in the federal court or in making the affidavit in the land office, and under such circumstances this court ought not to proceed summarily to try the question, but should leave the case to be determined by a jury upon an indictment. And especially is this true in the case at bar, for the record shows from the testimony of such reputable citizens of Oregon City as Judge McBride, Geo. C. Brownell, D. C. Latourette, W. C. Johnson, Captain Apperson, Peter Pac-

quet, and others, that during Cowing's five years' residence in that community he has borne an excellent reputation for truth and veracity, and as an honorable member of his profession.   In addition to this there appear in the record letters and certificates from the state of Minnesota, where Cowing resided for many years prior to his coming to Oregon, signed by the governor, judge of the district court, attorney-general, and other persons of position and standing, certifying that he bore a like reputation in that state, and stood high in the estimation of the people, both in his personal and professional character, and had been intrusted with positions of honor and trust, the duties of which he discharged with fidelity.   Under such circumstances, it is eminently just and proper that when an attorney of the reputation and standing of Cowing, as shown by this record, is accused of the commission of an indictable offense, committed outside of the line of his professional duties, he should be accorded the right of a trial before a jury, on an indictment regularly found against him, before he is deprived of the valuable right to practice his profession.   It follows that the petition must be dismissed, and it is so ordered.

DISMISSED.