Argued and submitted on demurrer to accusation July 17, demurrer overruled October 10, 1922, tried and submitted October 23, defendant suspended December 11, 1923.

## STATE EX REL. GRIEVANCE COMMITTEE *v.* WOERNDLE.

(209 Pac. 604; 220 Pac. 744.)

**Attorney and Client—Every Court has Inherent Power to Strike from Its Roll Name of Attorney Who has Been Guilty of Corrupt, Dishonest or Untrustworthy Conduct.**

1. Every court has inherent power to strike from its roll the name of an attorney who has been guilty of conduct or acts committed inside or outside of his professional employment, which show him to be corrupt, dishonest or untrustworthy.

**Perjury—Officer Authorized to Administer Oath by Department of Federal Government Held an "Officer Authorized to Administer an Oath" Within Provision of Federal Penal Code Defining Perjury.**

2. Where a department of the federal government is authorized by statute to designate and prescribe rules for the administration

---

1. Power of courts to disbar attorneys, see notes in 45 Am. St. Rep. 71; 5 Ann. Cas. 990; 15 Ann. Cas. 419.

of powers and authority given by statute, such department has authority to make regulations which are not inconsistent with law and are appropriate to the performance of its duties, and when, by valid regulations, the department requires an affidavit to be made before an officer otherwise competent, such officer is authorized to administer the oath within Section 125 of the Penal Code (U. S. Comp. Stats., § 10295), defining perjury.

**Perjury—Notary Public of State Held an "Officer Authorized to Administer Oath" Within Federal Statute Defining Perjury.**

3.   A notary public of one of the states is an officer authorized by law to administer an oath within federal Section 125 of the Penal Code (U. S. Comp. Stats., § 10295), defining perjury.

**Attorney and Client—Attorney Guilty of Perjury Subject to Disbarment.**

4.   An attorney, who signs an affidavit for purpose of procuring a passport under the rules promulgated by the President of the United States, under Sections 7623, 7624 of the United States Compiled Statutes, without a belief that the statement sworn to by him is true, may be disbarred under Section 1091, Or. L., providing for disbarment when it shall appear that the conduct of an attorney has been such that he would be denied admission to the bar, such attorney being guilty of perjury, under federal Section 125 of the Penal Code (U. S. Comp. Stats., § 10295).

**Attorney and Client—In Disbarment Proceeding, Court will Look to Substance of Charge Rather Than Technical Accuracy With Which It is Presented.**

5.   In disbarment proceeding the court on demurrer will look to the substance of the charge rather than to the technical accuracy with which it is presented.

**Attorney and Client—Attorney Who Commits Perjury Subject to Suspension or Disbarment Without First Having Been Indicted and Convicted.**

6.   An attorney who commits perjury, whether committed inside or outside of his professional employment, is subject to suspension or disbarment without first having been indicted and convicted.

**Attorney and Client—Motive Considered in Mitigation of Offense Alleged as Ground for Disbarment.**

7.   That an attorney at law swore to a false affidavit to secure a passport for a party returning to Germany, in belief that he would aid his father there, while not a defense in disbarment proceedings, may be considered in mitigation.

**Attorney and Client—Court has Power to Strike from Roll Name of Dishonest or Untrustworthy Attorney.**

8.   Every court has inherent power to strike from its roll the name of an attorney who has been guilty of conduct or acts, committed

4.   Commission of perjury as grounds for suspension or disbarment of attorney, see note in 9 A. L. R. 200.

5.   Conviction of crime as condition precedent to disbarment therefor, see notes in 114 Am. St. Rep. 839; 8 Ann. Cas. 847.

inside or outside of his professional employment, which show him to be corrupt, dishonest or untrustworthy.

**Attorney and Client—Attorney Guilty of Perjury Subject to Disbarment.**

9. An attorney at law, who filed a false affidavit to procure a passport, thereby violating Section 125 of the Penal Code of the United States (U. S. Comp. Stats., § 10295), defining perjury, violates his duty to support the laws of the United States as commanded by Section 1082, paragraph 1, Or. L., and may be disbarred under Section 1091, providing for disbarment, when it shall appear that the conduct of an attorney has been such that he would be denied admission to the bar.

**Attorney and Client—Court not Inhibited from Action in Disbarment Proceedings by Time Limitation on Prosecution of Such Proceedings.**

10. The court is not inhibited from taking action in disbarment proceedings, by reason of any law limiting the time within which such proceedings may be prosecuted, but the time of the commission of the offense may be taken into consideration along with other facts.

**Attorney and Client—Attorney Filing False Affidavit Suspended for Six Months.**

11. Where an attorney at law filed a false affidavit to procure a passport, thereby violating a law which it was his duty to uphold, in view of his integrity as a lawyer, and the time of the offense and the purpose in view, *held*, that he be suspended from the practice of his profession for six months.

Original proceedings for disbarment.

For plaintiff there was a brief and oral argument by *Mr. Bradley A. Ewers.*

For defendant there was a brief and oral argument by *Mr. C. T. Haas.*

McCOURT, J.—This is a disbarment proceeding. The members of the Grievance Committee of the State Bar Association and the members of the Grievance Committee and Chancellors of the Multnomah Bar Association join in presenting and prosecuting the accusation against the defendant.

By a demurrer interposed thereto, defendant asserts that the facts alleged in the accusation do not disclose any legal grounds for his disbarment.

It is alleged in the accusation that the defendant was born in Germany in the year 1880, and came to this country in the year 1897, and was on the twenty-third day of August, 1904, by order of a competent court, admitted to full citizenship in the United States of America; that defendant is and has been since the year 1910 an attorney at law, residing in the City of Portland, Multnomah County, Oregon, and admitted to practice in the Supreme Court of the State of Oregon; that in the year 1914, defendant applied in writing to the Secretary of State of the United States for a passport, and directed that upon issuance of the passport applied for, the same be sent to Joseph Woerndle, care of Waldorf-Astoria Hotel, New York; that defendant accompanied his application for a passport with a certificate of his citizenship and the fee required by law, together with an affidavit, subscribed and sworn to by him before a notary public, which affidavit is set out in the accusation.

It is further alleged in the accusation that pursuant to the application made by defendant, a passport was duly and regularly issued about October 9, 1914, to Joseph Woerndle by the proper officers of the Department of State and was sent by them as directed to the said Joseph Woerndle, care of Waldorf-Astoria Hotel, New York; that the passport so issued and delivered was thereafter called for and delivered to Hans W. Boehn, who, with the consent and connivance of defendant, took and assumed the name of Joseph Woerndle; that for the purpose of aiding Boehn in perpetrating the deception mentioned and those later carried out by him, defendant delivered to Boehn a patent for lands that had been issued to defendant; that at and long prior to Octo-

ber 3, 1914, the date of the application of defendant
for a passport, Hans W. Boehn, above mentioned,
was a citizen of the German empire and a subject of
its ruler, and was a resident and inhabitant of Mult-
nomah County, State of Oregon; that on October 3,
1914, and for some time prior thereto, a state of war
existed between the Imperial German government,
allied with the Imperial and Royal Austro-Hungarian
government, and the Republic of France allied with
the Kingdom of Great Britain and Ireland, the King-
dom of Belgium and the Imperial government of
Russia; that Hans W. Boehn was an officer of the
German army, and from October 3, 1914, and there-
after, was acting as agent of the Imperial German
government in protecting its interests and furthering
its warfare against countries with which the United
States, as a nation, was at peace, but with which the
Imperial German government and Imperial and
Royal Austro-Hungarian government were at war,
which facts were known to the defendant; that at
the time the defendant prepared, signed and swore
to the affidavit presented by him to the Department
of State, neither the affidavit nor the application for
passport were made or filed for the purpose of en-
abling defendant to go abroad temporarily, or at all,
but were made and filed by defendant with the inten-
tion and purpose of supplying documents· and evi-
dence to Hans W. Boehn that would enable the latter
to travel in safety from New York to Berlin, Ger-
many, and return, under the protection of the govern-
ment of the United States, and that the said Hans W.
Boehn did use the passport, so issued to defendant,
for the purposes mentioned, and that by virtue of.
the passport so issued, and the passports thereafter
issued to Hans W. Boehn upon applications made by

109 Or.—30

him in the name of Joseph Woerndle, and supported by the citizenship papers and land patent of defendant, Hans W. Boehn traveled safely in various European countries then at war with the Imperial German government, in which the said Hans W. Boehn could not have traveled without arrest and incarceration as a prisoner of war; and that thereby defendant openly and knowingly aided and assisted Hans W. Boehn in perpetrating frauds upon the government of the United States in securing its protection abroad for one not a citizen thereof, and in perpetrating frauds upon other nations and countries with which the United States was at peace, and the Imperial German government and its allies were at war.

It is made the duty of the Supreme Court to disbar any member of the bar of this state upon proper proceedings for that purpose, " * * whenever it shall appear to that court that his conduct has been such that if he were then applying for admission to the bar his application should be denied." Section 1091, Or. L.

1. The above section of the Code is a statutory declaration of the power inherent in every court to strike the name of an attorney from its roll, who has been guilty of conduct or acts committed inside or outside of his professional employment, which show him to be corrupt, dishonest or untrustworthy: *State v. Winton,* 11 Or. 456 (5 Pac. 337, 50 Am. Rep. 486); *Ex parte Mason,* 29 Or. 18 (43 Pac. 651, 54 Am. St. Rep. 772).

At the date that defendant applied for a passport, it was not a crime, nor was it regarded as immoral or corrupt for citizens of the United States, including attorneys at law, who were born in Germany, to sympathize with the German cause in the war, or

even to favor and support that cause by overt acts which were not criminal.

The allegations of the accusation which disclose that in 1914 and 1915 the defendant sympathized with the cause of Germany in the late war and assisted Hans W. Boehn to travel abroad in the interest of that cause may be disregarded, except in so far as those acts of the defendant tend to show the truth or falsity of the statements contained in the affidavit made by defendant and which accompanied his application for a passport.

The affidavit which the defendant submitted to the State Department in connection with his application for a passport was one required by the laws of the United States. The statutes provide:

"The Secretary of State may grant and issue passports * * under such rules as the President shall designate and prescribe for and on behalf of the United States. * * " Section 7623, U. S. Comp. Stats.

"No passport shall be granted or issued to or verified for any other persons than those owing allegiance, whether citizens or not, to the United States." Section 7624, U. S. Comp. Stats.

The President of the United States, under the authority given him by the statute, adopted and promulgated rules governing applications for passports, among which rules, as they existed in the year 1914, were the following:

"A citizen of the United States desiring to procure a passport must make a written application, in the form of an affidavit, to the Secretary of State."

"In this country the affidavit must be attested by an officer duly authorized to administer oaths. If he has no seal, his official character must be authenticated by certificate of the proper legal officer."

"Every applicant is required to state the date and place of his birth, his occupation, and the place of his permanent residence, and to declare that he goes abroad for temporary sojourn and intends to return to the United States with the purpose of residing and performing the duties of citizenship therein." The American Passport issued by the Department of State (1898), pp. 60, 61.

The rules so adopted and promulgated prescribed the form of affidavit which the applicant for a passport was required to make. The affidavit made by defendant conformed to the regulations and likely was made upon a blank form furnished from the office of the Secretary of State. Defendant declared and stated in that affidavit: "I am about to go abroad temporarily; * * I intend to return to the United States within one year for the purpose of residing and performing the duties of citizenship therein." The statement mentioned was material and an indispensable prerequisite to the issuance of the passport; it was expressly required by the rules and was incorporated in the prescribed form of affidavit. The accusation in effect charges that defendant did not believe the foregoing statement made and sworn to by him to be true.

Section 125 of the federal Penal Code (U. S. Comp. Stats., § 10295), defines perjury as follows:

"Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, shall wilfully and contrary to such oath state or subscribe any material matter which he does not believe to be true, is guilty of perjury, * * "

2, 3. Where a department of the federal government is authorized by statute to designate and prescribe rules for the administration of powers and authority given by statute, such department has authority to make regulations which are not inconsistent with law and are appropriate to the performance of its duties, and when by valid regulations the department requires that an affidavit shall be made before an officer otherwise competent, that officer is authorized to administer the oath within the meaning of Section 125 of the Penal Code, and under such a regulation, a notary public of one of the states is an officer authorized by law to administer the required oath: *United States* v. *Smull,* 236 U. S. 405 (59 L. Ed. 641, 35 Sup. Ct. Rep. 349); *United States* v. *Morehead,* 243 U. S. 607 (61 L. Ed. 926, 37 Sup. Ct. Rep. 458); *Caha* v. *United States,* 152 U. S. 211, 218 (38 L. Ed. 416, 417, 14 Sup. Ct. Rep. 513); *United States* v. *Bailey,* 9 Pet. (U. S.) 238, 255 (9 L. Ed. 113, 120, see, also, Rose's U. S. Notes); *Patterson* v. *United States,* 202 Fed. 208 (120 C. C. A. 650).

4, 5. In view of the decisions of the Supreme Court of the United States above cited, the accusation charges that defendant committed perjury in connection with his application for a passport, and while the allegations of the accusation do not conform to the strict technical requirements of an indictment, they are nevertheless sufficient as a charge of perjury in a proceeding for disbarment, where "the court will look to the substance of the charge rather than the technical accuracy with which it is presented." *State ex rel. Multnomah County Bar Assn.* v. *Greenfield,* 93 Or. 407 (162 Pac. 858).

6. An attorney who commits perjury, whether committed inside or outside of his professional employ-

ment, is subject to suspension or disbarment, without his having been first indicted and convicted: *State* v. *Winton,* 11 Or. 456 (5 Pac. 337, 50 Am. St. Rep. 486); *State* v. *Cowing,* 26 Or. 572 (38 Pac. 1090); *State* v. *Graves,* 73 Or. 331 (144 Pac. 484, L. R. A. 1915C, 259); *People* v. *Smith,* 290 Ill. 241 (124 N. E. 807, 9 A. L. R. 183, and note pp. 189, 200). An accusation is sufficient which alleges the facts constituting such perjury.

The demurrer interposed by defendant is therefore overruled, and if defendant desires to file an answer to the accusation, he may do so on or before October 25, 1922.          DEMURRER OVERRULED.

ON THE MERITS.

DEFENDANT SUSPENDED.

For the plaintiff, *Mr. Bradley A. Ewers* and *Mr. Elton Watkins.*

For defendant, *Mr. C. T. Haas* and *Mr. Joseph Woerndle, in pro. per.*

BROWN, J.—This is not a criminal proceeding, having for its object the punishment of Joseph Woerndle. The defendant is charged with offending against the laws of the United States, not of the State of Oregon. This is a special proceeding, summary in character, instituted for the purpose of disbarring the defendant. It is not a case wherein the attorney at law has wronged a trusting client or deceived the court. But the defendant, according to the findings, has violated a law of the United States.

Under the circumstances disclosed by the record, should we revoke Woerndle's license as an attorney at law, a public officer of this state?

In October, 1914, Hans W. Boehn, a reserve officer in the German army, residing in Portland, Oregon, desired to return to his native land for the purpose of joining the army. Joseph Woerndle, a naturalized citizen of the United States and an inhabitant of Portland, Oregon, interested himself in Boehn's behalf, and, in accordance with the rules prescribed by the United States government, applied to the Secretary of State of the United States for a passport for himself. On its issuance, he caused it to be sent to the City of New York, where, by agreement, it was received by Boehn; and this passport enabled Boehn, under the name of Joseph Woerndle, to pass into the boundaries of the German empire.

Following the lawful regulations relative to the application for, and issuance of, passports by the federal government, Woerndle filed his application in the form of an affidavit, which contained this material statement:

"I am about to go abroad temporarily; * * I intend to return to the United States within one year for the purpose of residing and performing the duties of citizenship therein."

It is averred by the prosecution that the excerpt above quoted was willfully false and corrupt and was a violation of Section 125 of the federal Penal Code (U. S. Comp. Stats., § 10295) defining perjury.

This case was before the court on demurrer to the petition for disbarment herein. See *State ex rel. Grievance Committee of Oregon State Bar Assn. et al.* v. *Woerndle,* decided October 10, 1922, reported in 209 Pac. 604. The court held that the petition stated cause sufficient. Thereafter, upon reference to the judge of the Nineteenth Judicial District of the State of Oregon, the testimony was taken, and,

among others, the following findings of fact were made:

"That at the time said Joseph Woerndle, the defendant, prepared and signed said affidavit and application for passport, and at the time of the presentation thereof to the Department of State at Washington, D. C., the said defendant Joseph Woerndle did not intend to go abroad, temporarily or otherwise, but made said application and said affidavit and presented the same to the Department of State at Washington, D. C., for the purpose of enabling Captain Hans W. Boehn to use the same and caused the issuance thereof by the Department of State and the delivery of such passport to the Waldorf-Astoria Hotel, New York City, and caused and directed the said Captain Hans W. Boehn to secure the same, and at or about the same time delivered to said Captain Hans W. Boehn certified copies of his certificate of naturalization and a United States patent for lands in the State of California issued by the United States to the said defendant, Joseph Woerndle, as a means of identification for said Captain Hans W. Boehn, with the intent and purpose that the said Captain Hans W. Boehn should use said passport to enable him to leave the United States and to join the German army. * *

"That the defendant Joseph Woerndle may have had a secondary purpose in obtaining said passport and enabling said Captain Hans W. Boehn to use the same for the purpose of leaving the United States and entering the Empire of Germany, of securing for his relatives in Germany succor and assistance during the time of the existence of war; but such purpose was submerged in the purpose, on the part of said defendant Joseph Woerndle, in securing the exit from the United States, and the entering into the German Empire, of the said Captain Hans W. Boehn for the purpose of assisting Germany in the war.

"That from the time of the beginning of the war between Germany and Austria against England, Belgium, France and Russia, the sympathies of the defendant Joseph Woerndle were with the Empire of

Germany, and he was imbued with a very great desire for the success of Germany in that conflict. But from and after the entry of the United States into said World War, the said defendant, Joseph Woerndle, did not perform any acts or make any statements indicating that he was in sympathy with Germany and against the United States, but his acts and conduct evidenced, to some extent, that he was in sympathy with the United States in her efforts to win said war.''

The court further found:

''That Joseph Woerndle bears a good reputation for honesty, integrity, industry and uprightness, both in and out of his profession, and is a law-abiding citizen, except as in these findings particularly specified.''

There are certain writings in the record bearing date prior to the time of the declaration of war by the United States, which show Woerndle's exalted view of the Kaiser. In a letter to his brother bearing date May 8, 1916, he unrestrainedly glorifies the Ruler of the Imperial German Empire:

''The whole world admires the Emperor, for he is perhaps the greatest man that ever lived, the ablest soldier, diplomat and ruler, and I hope he will succeed to lift the world back upon its axle. If he can't do it nobody else can.''

Again, in a letter addressed to Boehn:

''No matter what friend or foe may think of German militarism, and the Kaiser's 'Me und Gott,' no human being has ever guided the destinies of that country like Wilhelm.''

The record contains letters written by Woerndle prior to the entry of the United States into the World War, wherein he goes to the verge in criticising the President of the United States. However, as noted in the findings of fact, the defendant, at all times since the declaration of war by the United

States, has been loyal to America. We will make no further reference to his letters alluded to above, because the Constitution of the United States declares that we shall not abridge "the freedom of speech or of the press."

7. The defendant, Joseph Woerndle, was born in Germany in the year 1880. He emigrated to the United States in 1897, was naturalized as a citizen August 23, 1904, and admitted to the Bar of this state in 1910. He married a native-born citizen of the United States and has a family consisting of three boys, none of whom speak German. In October, 1914, the time of the application for the passport hereinbefore referred to, the defendant's father was an old man, and, according to his testimony, was wholly dependent upon him for support. Remittances made by the son to the father failed to reach their destination. Woerndle asserts that failure in his duty to his aged parent in Germany prompted him to procure the passport and turn it over to Boehn, who promised to aid the father upon his arrival in Germany. This is not a matter of defense, but may be considered in mitigation. However, the correspondence in the record, between Woerndle and Boehn, tends to show that defendant's chief motive in procuring the passport was to permit Boehn to join the German army.

It is charged that the defendant committed perjury in applying for a second passport, which was ultimately issued to him. The government was fully advised of all the facts in the matter when the second passport was issued. The defendant, under oath, in his application, said that his former passport was lost or had been stolen. The record shows that Boehn had written the defendant that he had returned de-

fendant's papers to him. Woerndle, failing to re-
ceive his passport from Boehn by mail in accordance
with the representations made by Boehn, may have
honestly believed that it was lost. Boehn's card to
Woerndle does not prove that the passport was ever
mailed to the defendant, but that does not make a
perjurer of Woerndle if he honestly believed that
Boehn had mailed him the passport and that it had
been lost. If Joseph Woerndle filed a false affidavit
in his application for the second passport, the federal
government knew all the circumstances before the
statute of limitation for the prosecution of the crime
of perjury had expired, and the federal government
is willing and abundantly able to enforce its own
criminal statute. However, it seems to the writer
that the words, "journey not made," were knowingly
used with intent to deceive the officials of the State
Department.

8, 9. An attorney may be disbarred by this court—

"Whenever it shall appear * * that his conduct has
been such that if he were then applying for admission
to the bar, his application should be denied." Sec-
tion 1091, Or. L.

.Under the provisions of the following section, an
attorney may be removed or suspended—

"1. Upon his being convicted of any felony or of a
misdemeanor involving moral turpitude * * ;
"2. For a willful disobedience or violation of the
order of a court requiring him to do or forbear an
act connected with or in the course of his profession;
"3. For being guilty of any willful deceit or mis-
conduct in his profession;
"4. For a willful violation of any of the provisions
of Section 1082." Section 1092, Or. L.

Section 1082, Or. L., consists of eight paragraphs.
All but the first paragraph relate to the practice of

the profession of the law. Paragraph 1 prescribes that it is a duty devolving upon an attorney "to support the Constitution and laws of the United States and of this state."

It is contended that the defendant has not offended against any law relating to his employment as attorney at law, and that he has been honest and upright in the performance of all his professional duties. But, as we said through Mr. Justice McCourt in *State* v. *Woerndle, supra,* when this case was heard upon demurrer to the petition, an inherent power rests with "every court to strike the name of an attorney from its rolls who has been guilty of conduct or acts committed inside or outside of his professional employment which show him to be corrupt, dishonest or untrustworthy."

In order to procure a passport for himself, which he intended for the use of Boehn, the defendant filed a false affidavit. Do trustworthy lawyers make false oaths? That question must be answered in the negative. It was alleged, and found as a fact,—which is supported by the testimony,—that the defendant offended against a statute of the United States by willfully subscribing to an oath containing material matter which, at the time of taking such oath, he did not believe to be true. Thus, he violated his duty to support the laws of the United States as commanded by Or. L., Section 1082, paragraph 1.

The defendant asserts that this charge is stale, and, by reason thereof, should be disregarded.

10. We are not inhibited from taking action in this case by reason of any law limiting the time within which such a proceeding may be prosecuted. However, the writer is of opinion that, in arriving at a conclusion as to the ultimate disposition of the cause,

the time of the commission of the offense is a matter to be taken into consideration, with the other facts in the case.

Further comment is unnecessary. There can be no successful setting up of a defense to Woerndle's conduct in obtaining the passport issued to him and received by Boehn. He violated a law that it was his duty to uphold. His act was premeditated. The only question is: What shall the judgment be? We have said that this is not a proceeding to punish the defendant. The federal government vindicates its own laws. Nevertheless, this court owes a duty to the legal profession, the public, and itself that Woerndle's conduct shall not go unrebuked.

11. Taking into consideration all the facts and circumstances, and especially his integrity as a lawyer, we do not believe that the defendant should be permanently disbarred; but we are of opinion that the interests of justice demand that he be suspended from the practice of his profession as an attorney at law for the period of six months.

It is so ordered.        DEFENDANT SUSPENDED.

BURNETT, J., not sitting.