Submitted on record and brief of Oregon State Bar December 8, accused disbarred December 30, 1986

In re Complaint as to the Conduct of

# ORLIN R. ANSON,
*Accused.*

## (OSB 85-29; SC S33042)

730 P2d 1229

Susan D. Isaacs, Assistant General Counsel, Lake Oswego, filed the petition for review and brief of the Oregon State Bar.

John E. Uffelman, Hillsboro, represented the Oregon State Bar before the Trial Panel.

No appearance by the accused.

PER CURIAM

## PER CURIAM

The Oregon State Bar filed a complaint against Orlin R. Anson, accusing him of unethical conduct in two separate causes. Both causes arise or result from Anson's representation of Inez Hayes, an elderly widow, between August 1981 and July 1982. The first cause alleged that Anson obtained Hayes' endorsement to a certified check in excess of $21,000, deposited the check to his personal checking account and then used the funds for his own purposes. The second cause alleged that Anson arranged for Hayes to purchase approximately $500 worth of security devices for her residence without informing her that he and his wife owned the firm making the sale. The first cause alleged that Anson violated five Disciplinary Rules, which at the time of the alleged violations read and were numbered as follows:

"DR 1-102 Misconduct.

"(A) A lawyer shall not:

"* * * * *

"(3) Engage in illegal conduct involving moral turpitude.

"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

"DR 9-102 Preserving Identity of Funds and Property of a Client.

"(A) All funds of clients paid to a lawyer or law firm, including advances for costs and expenses, shall be deposited in one or more identifiable trust accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein [exceptions do not apply].

"(B) A lawyer shall:

"* * * * *

"(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

"(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in

the possession of the lawyer which the client is entitled to receive."[1]

The second cause alleged that Anson violated two Disciplinary Rules, which at the time of the alleged violations read as follows:

"DR 5-101   Refusing Employment When the Interests of the Lawyer May Impair His Independent Professional Judgment.

"(A)   Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.

"DR 5-104   Limiting Business Relations with a Client.

"(A)   A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure."[2]

Anson's answer admitted that he was a lawyer and

---

[1] Effective June 1, 1986, DR 1-102 was amended. Former DR 1-102(A)(3) was renumbered as DR 1-102(A)(2) and amended to read: "Commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law." Former DR 1-102(A)(4) was renumbered as DR 1-102(A)(3).

Effective the same date DR 9-102(A), 9-102(B)(3) and 9-102(B)(4) were renumbered DR 9-101(A), DR 9-101(B)(3) and 9-101(B)(4).

[2] Effective June 1, 1986, DR 5-101(A) and DR 5-104(A) were amended to read:

"DR 5-101 Conflict of Interest: Lawyer's Self Interest.

"(A)   Except with the consent of the lawyer's client after full disclosure, a lawyer shall not accept employment if the exercise of the lawyer's professional judgment on behalf of the lawyer's client will be or reasonably may be affected by the lawyer's own financial, business, property, or personal interests. Full disclosure shall include the recommendation that the client seek independent legal advice concerning the continued representation by the lawyer.

"DR 5-104 Limiting Business Relations with a Client.

"(A)   A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise the lawyer's professional judgment therein for the protection of the client, unless the client has consented after full disclosure. Full disclosure shall include a recommendation that the client seek independent legal advice."

denied the balance of both causes. A hearing was held before the trial panel on May 14, 1986. Anson did not appear for the hearing in person or by counsel. The alleged victim, Inez Hayes, did not appear because of her infirm physical and mental conditions.

The Oregon State Bar called 12 witnesses to testify before the trial panel. They included four bank employees, the manager of accounts for an escrow company, an assistant general counsel for the Bar, a lawyer in private practice, a lawyer who was a member of the local professional responsibility committee, a detective from the Salem Police Department, a lawyer who had been Anson's former law partner, and a husband and wife who were long-time neighbors of the victim. Most of the witnesses were subject to extensive and searching "cross-examination" by members of the trial panel.

The trial panel held that in the first cause Anson had violated former DR 1-102(A)(4), DR 9-102(A), DR 9-102(B)(3) and DR 9-102(B)(4) but did not violate former DR 1-102(A)(3). In the second cause, the trial panel held that Anson did not violate either DR 5-101(A) or DR 5-104(A). Based upon its findings of fact and conclusion, the trial panel "recommended" that Anson "be permanently disbarred."

Review by this court is automatic. BR 10.1 in part provides: "If the decision of the trial panel is to suspend the accused for a period longer than 60 days or to disbar the accused, the matter shall be reviewed by the Supreme Court." Anson has filed neither a petition for review nor a brief.[3] However, the Bar has filed a petition for review in this court together with a brief. The petition requests that we adopt the findings and decision of the trial panel except that we should find that Anson also violated former DR 1-102(A)(3) in the first cause and DR 5-101(A) and DR 5-104(A) in the second cause.

This court's review is "de novo upon the record." BR 10.6. We hold that Anson did violate all five former Disciplinary Rules set forth in the first cause including former DR 1-102(A)(3). We hold that Anson did not violate either DR

---

[3] BR 10.5(b) provides in part: "*Moving party.* The petition shall be filed by the accused * * * if the trial panel made a finding of misconduct against the accused * * *; otherwise, the Bar shall file the petition."

5-101(A) or DR 5-104(A) set forth in the second cause. We disbar Anson.

Inez Hayes' husband died on August 8, 1981. Shortly thereafter she employed Anson to help her with her affairs. Hayes was dependent upon other people for assistance. Her neighbors of long standing, Charles and Edith Lacey, among other things drove her to the store and wrote out her checks because of her failing eyesight. Anson also wrote out checks for Hayes' signature. Anson advised Hayes that she was living in the worst crime area in Salem and that she should install dead bolts and iron bars in her residence. The security devices were installed in Hayes' home by Mainline Metal Works, Inc. which was owned by Anson and his wife. At the time of the installation, Hayes knew that Anson was one of the owners of Mainline Metal Works, Inc.

On August 26, 1981, and again on November 20, 1981, Hayes executed wills prepared by Anson. Both wills named Hayes' daughters and grandchildren as beneficiaries.

About April 1982, Hayes told the Laceys that Anson wanted her to transfer her money from the bank to his vault for safekeeping. She said that Anson could earn more interest with the money than what she was earning at the bank.

On May 27, 1982, a certificate of deposit owned by Hayes was liquidated and a cashier's check in the amount of $21,196.71 was issued to Hayes by First Interstate Bank. The cashier's check was endorsed by both Hayes and Anson. On June 2, 1982, it was deposited in Anson's personal account at U.S. National Bank. The account was not connected with Anson's law practice. At the time the $21,196.71 was deposited, Anson's account was overdrawn in the amount of $64.91. Shortly after depositing the money Anson wrote 21 or 22 checks on the account. None were for the benefit of Hayes. The balance of the account on June 30, 1982 was $8.46.

By February 22, 1983, Hayes had forgotten that she had given money to Anson. On that date she called First Interstate Bank and found out that the money was not there. She enlisted the help of Charles Lacey. They went to the bank where they were shown the cancelled cashier's check and the endorsements. Hayes immediately accused Anson of stealing

her money. Lacey reported the matter to the District Attorney's office. Hayes signed a letter which Lacey prepared at her request terminating Anson's legal services and demanding the return of her papers and property. Lacey delivered the letter in person to Anson's law office.

During the period of time in question, Anson's financial situation was poor. At times he was delinquent on his payments to the former owners of the stock of Mainline Metal Works. On the same day that he deposited Hayes' cashier's check in his personal account, he wrote a check in the amount of $13,000 as a payment to the former owners. He financed the purchase of a pickup truck, steam cleaner and loader for Mainline Metal Works with U. S. National Bank. Later that bank told him to take his business elsewhere, refused to pay his overdrafts and charged off more than $16,000 in loans. At the time of the hearing before the trial panel Mainline Metal Works, Inc. was in a Chapter 7 Bankruptcy proceeding.

According to Hayes' neighbors, the Laceys, her mental capacity began to decline in the fall of 1981. Thereafter her condition continued to go downhill, and on occasion she would have hallucinations. In mid-1984 Hayes moved to Nevada to live with her daughters. By January of 1986 her physical and mental condition had deteriorated to the point where she was essentially incompetent.

When Anson's law partners questioned him about Hayes' $21,196.71 cashier's check, he said that it was a gift. The partners asked him if he told Hayes to seek advice from other counsel. He replied, "Yes, I did, but she refused and insisted upon the gift and I took it." On October 23, 1984, Anson wrote to the Oregon State Bar in part: "It is true that Inez [Hayes] gave me the money * * *."

We find that Hayes, in a questionable mental condition, delivered the cashier's check to Anson for "safekeeping" and "to earn more interest than she was earning at the bank." When Anson deposited the money in his personal checking account, he converted it. At that point he had stolen Hayes' money. It was not a gift. The gift idea was a lame after-the-fact fabrication. There was nothing in the prior relationship of this elderly widow and her lawyer to indicate that she would favor him with a gift of this size. Her wills show that her daughters

and grandchildren would be the most likely persons to receive sizeable gifts from her.

We hold that Anson by receiving Hayes' money for safekeeping and later converting it to his own use: (1) engaged in conduct involving dishonesty, fraud, deceit and misrepresentation in violation of former DR 1-102(A)(4); (2) failed to deposit the funds in an identifiable trust account in violation of former DR 9-102(A); (3) failed to render appropriate accounts to Hayes regarding the money in violation of former DR 9-102(B)(3); and (4) failed to deliver or repay the money to Hayes as requested by her in violation of former DR 9-102(B)(4).

The trial panel found that Anson did not violate former DR 1-102(A)(3), which read: "A lawyer shall not engage in illegal conduct involving moral turpitude." There is no clue in the trial panel's decision as to why it reached that result, except the panel's finding that the Bar failed to present any evidence that Anson had been convicted of a crime.[4]

Former DR 1-102(A)(3) is not to be confused with ORS 9.527(2) which provides:

> "The Supreme Court may disbar, suspend or reprimand a member of the bar whenever, upon proper proceedings for that purpose, it appears to the court that:
>
> "* * * * *
>
> "(2)   The member has been convicted in any jurisdiction of an offense which is a misdemeanor involving moral turpitude or a felony under the laws of this state, or is punishable by death or imprisonment under the laws of the United States, in any of which cases the record of the conviction shall be conclusive evidence * * *."

■■   Former DR 1-102(A)(3) does not require that the accused lawyer be convicted of a crime involving moral turpitude. In a disciplinary case the standard of proof is reduced to clear and convincing evidence. BR 5.2. The elements of the

---

[4] In the record is an exhibit which is a partial transcript of a case in Marion County Circuit Court entitled "THE STATE OF OREGON, Plaintiff, v. ORLIN R. ANSON, Defendant." The partial transcript includes only an in camera hearing concerning the competency of Inez Hayes. We think that it was a criminal case because the Chief Deputy District Attorney for Lincoln County appeared as a Special Prosecutor. We conclude that Anson was not convicted in the Marion County case.

former Disciplinary Rule are simple: (1) A lawyer shall not engage in (2) illegal conduct (3) involving moral turpitude. Anson admitted in his answer that he was a lawyer. His conduct was illegal—with the intent to deprive Hayes of her money, he appropriated the money from her. In this case we look to the criminal code, ORS 164.015(1), for the appropriate standard of illegal conduct, though of course we cannot convict an accused lawyer of a crime in this proceeding. *Compare In re Roth,* 293 Or 179, 189, 645 P2d 1064 (1982). There is no polite way to say it—Anson committed theft. Theft involves moral turpitude. *In re Carstens,* 297 Or 155, 163, 683 P2d 992 (1984).

In *State ex rel Grievance Committee v. Woerndle,* 109 Or 461, 209 P 604, 220 P 744 (1923), decided prior to the adoption of the disciplinary rules, a lawyer was suspended for committing perjury when he had not been indicted and convicted of that crime. In 1914 Hans W. Boehn, a reserve officer in the German Army residing in Portland, desired to return to his native land to join the army. The lawyer, Joseph Woerndle, was a naturalized citizen of the United States. He became interested in Boehn's problem. Woerndle applied for a passport in his own name. In his application he swore;

" 'I am about to go abroad temporarily; * * * I intend to return to the United States within one year for the purpose of residing and performing the duties of citizenship therein.' " 109 Or at 468.

When the passport was issued, Woerndle gave it to Boehn. The passport enabled Boehn, under the name of Woerndle, to travel safely to Germany in wartime as a supposed America citizen.

This court suspended Woerndle from the practice of law and said:

"An attorney who commits perjury, whether committed inside or outside his professional employment, is subject to suspension or disbarment, without his having been first indicted and convicted." (Citations omitted.). 109 Or at 469-70.

Based upon clear and convincing evidence we hold on the first cause that Anson violated former DR 1-102(A)(3).

On the second cause, concerning the sale of the dead

bolts and iron bars, the trial panel found that Anson did not violate DR 5-101(A) or DR 5-104(A). We agree. Under both rules the Bar is required to prove by clear and convincing evidence that the client did not consent to the transaction with the lawyer after a full disclosure.

There is evidence in the record that Hayes knew that Anson and his wife were the owners of the Mainline Metal Works, Inc., which installed the security devices. Consent after full disclosure is one of the elements of both rules. *See In re Montgomery,* 292 Or 796, 803, 643 P2d 338 (1982). The Bar is required to prove all elements of the alleged violation. BR 5.2. Neither Anson nor Hayes testified before the trial panel. There is simply no proof that Anson did not fully disclose his interest in Mainline Metal Works to Hayes, or that Hayes did not consent to the transaction after such disclosure.

■ By way of summary, on the first cause we find Anson guilty of violating former rules DR 1-102(A)(3), DR 1-102(A)(4), DR 9-102(A), DR 9-102(B)(3) and DR 9-102(B)(4). We find Anson not guilty on the second cause.

We disbar Anson from the practice of law. The Oregon State Bar is awarded costs.