Argued and submitted March 5, accused is suspended from the practice of law for a period of six months commencing on the effective date of this decision July 8, reconsideration denied September 21, 1993

In re Complaint as to the Conduct of

## Steven E. BENSON,
*Accused.*

(OSB 90-95; SC S39237)

854 P2d 466

Lia Saroyan, Assistant Disciplinary Counsel, Oregon State Bar, Lake Oswego, argued the cause and filed the brief for the Oregon State Bar.

Stephen R. Moore, Portland, argued the cause and filed the briefs for the accused.

PER CURIAM

## PER CURIAM

This is a lawyer discipline case. The principal charge involves the preparation by the accused for a client of two promissory notes secured by trust deeds to real properties owned by the client. The notes and security were recorded. The loan transactions referred to in those documents had not, in fact, occurred. A trial panel found the accused guilty of violating four disciplinary rules, including counseling or assisting a client in conduct that the accused knew to be fraudulent, in connection with the document preparation and a subsequent investigation of the case. The trial panel recommended that the accused be suspended from the practice of law for 120 days. The accused appeals to this court, challenging only the finding of guilt on the fraud charge and the sanction. (He agrees that, if the finding as to fraud is sustained, then the sanction is justified.) The Oregon State Bar cross-appeals, seeking a greater sanction.[1] On *de novo* review, ORS 9.536(3); BR 10.6, we find the accused guilty and impose a six-month suspension from the practice of law.

The essential facts are not disputed, although their legal significance is. In January 1986, police executed a search warrant at property owned by Duane Millspaugh in Portland. Millspaugh was not present at the time, but became aware of the raid soon thereafter. The next morning, Millspaugh called the accused, who had represented Millspaugh successfully in a previous criminal case in which Multnomah County had sought forfeiture of Millspaugh's automobile. Millspaugh was concerned about the possibility that he might be charged with a criminal offense and that something uncovered in the search of his real property might lead Multnomah County to seek forfeiture of that property.

The accused and Millspaugh met at the accused's office. Millspaugh told the accused that he wanted to be notified before any forfeiture action was commenced by Multnomah County, so that he could remove personal property from the premises. Millspaugh owned the Multnomah property outright, free of encumbrances. He also owned a parcel in

---

[1] The parties have briefed and argued an evidentiary question concerning the admissibility of a transcript. Because we conclude that we would reach the same disposition in this case whether or not the transcript was considered, we do not consider it.

Clackamas County that was also unencumbered. The parties conceived of a possible way of obtaining advance warning: They would create and record encumbrances on the two parcels. If that were done, there would be at least a possibility that someone interested in pursuing forfeiture of either of the parcels would check first with the putative secured party, in order to determine the status of the security interests in the property.

The accused prepared two demand notes, together with two trust deeds as security for the notes, for Millspaugh to sign. The note on the Clackamas County property was for $50,000; the note on the Multnomah County property was for $40,000. The dates on the two notes were picked at random. Both dates preceded the raid on Millspaugh's Multnomah County property. The notes were demand notes payable to, and the trust deeds were for the benefit of, Millspaugh's brother Ronald. Although the documents stated that consideration had been paid for the notes and trust deeds, none in fact had been paid. The documents were recorded in the pertinent county records.

The accused testified that he thought that recording the trust deeds would indicate to anyone investigating the records that there were security interests in the property. Such an investigator would, the accused thought, contact Ronald Millspaugh to learn what the status of the security interest was. Ronald would then notify his brother of the inquiry, and Duane Millspaugh would be able to remove various items of personalty from the premises. The accused also testified that he believed that any forfeiture proceeding actually would be effective as of the date of any crime that had been committed on the premises, so the trust deeds — even if they generated the hoped-for inquiry — ultimately could not prevent forfeiture of the property. The accused further testified that he believed that the fact that the beneficiary of the trust deeds had the same last name as the property owner (Millspaugh) would be a tip-off to any investigator as to the nature of the underlying transactions.

In fact, no forfeiture proceeding ever occurred. Multnomah County officials testified that they considered proceeding against the property, but ultimately chose not to. The officials were aware of the notes and trust deeds. Those

documents played some role in the decision not to try to forfeit the properties, although it is not possible to quantify the exact weight that the existence of the notes and trust deeds was given in that calculation. The matter of the documents instead eventually came to court in another, somewhat ironic, way: Duane Millspaugh found it necessary to bring an action to force his brother to remove the cloud on Duane's title to the properties. The accused testified in that case. The trial judge then informed the Bar of the pertinent facts.

The Bar charged the accused with, *inter alia*, violations of DR 1-102(A)(3) (conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 7-102(A)(5) (knowingly making a false statement of law or fact); DR 7-102(A)(7) (counseling or assisting a client in conduct that the lawyer knows is illegal or fraudulent); and DR 1-103(C) (failure to cooperate in an investigation by the Bar).[2] The trial panel found the accused guilty of those four charges, and the present appeal followed.

■■ The accused challenges the trial panel's ruling that the accused violated DR 7-102(A)(7), which provides: "In the lawyer's representation of a client * * *, a lawyer shall not: * * * Counsel or assist the lawyer's client in conduct that the lawyer knows to be illegal or fraudulent." The accused argues that the trial panel cannot have found him guilty of counseling "illegal" conduct, because the acts that he admits committing were not shown to have violated any criminal or other statute. *See In re Hockett*, 303 Or 150, 160-62, 734 P2d 877 (1987) ("illegal conduct" includes both criminal conduct and other conduct forbidden by statute). Therefore, the accused reasons, the trial panel must have found him guilty of counseling "fraud." The accused then concludes that, although his conduct undoubtedly involved misrepresentations, it did not involve fraud, because he did not intend his conduct to mislead, nor did it in fact mislead, anyone.

---

[2] The accused was charged with two other violations of the disciplinary rules, but the trial panel found him not guilty of those charges. The Bar has appealed the finding of not guilty as to one of those charges, violation of ORS 9.460(2) (a lawyer shall "[e]mploy, for the purposes of maintaining the causes confided to the [lawyer], such means only as are consistent with truth"). Because our ruling on that question would not affect our choice of sanction in this case, we see no need to discuss it further in this opinion.

We disagree with the accused's analysis. First, it is inescapable that the accused hoped and intended that his misrepresentations be acted on — there was no point in going through the exercise unless it was going to produce a result. The accused also intended that his misrepresentation go undiscovered, at least long enough to permit Millspaugh to accomplish the purpose of the plan. The accused, in other words, assisted a client in committing fraud within the meaning of DR 7-102(A)(7). *See In re Dinerman*, 314 Or 308, 317, 840 P2d 50 (1992) (assisting client in obtaining loan beyond bank's loan limits).

Neither is the accused on firm footing as to the meaning of the rule. In *In re Hiller*, 298 Or 526, 533, 694 P2d 540 (1985), this court distinguished the concepts of "misrepresentation," "deceit," and "fraud" as follows: "A misrepresentation becomes fraud or deceit when it is intended to be acted upon without being discovered." The court later stated that the concepts of fraud and deceit in the disciplinary rules "refer to fraud and deceit that are actionable in Oregon[, requiring,] among other things, a false representation to another, with the intent that the other act upon the false representation to his or her damage." *In re Hockett, supra*, 303 Or at 157-58. Success of the scheme is not an element. It is enough that the accused tried to mislead. The foregoing concept of fraud fits precisely what the accused did here.

We find from the record that the representations created a real potential for damage. Not only was it possible that law enforcement authorities (in this case, Multnomah County) would be discouraged from seeking to forfeit Millspaugh's real property, it also was possible that Millspaugh would be able to remove certain personal property *that was itself forfeitable*.[3] (In fact, the accused acknowledged in his testimony that Millspaugh later was required to forfeit certain personal property in an unrelated proceeding.) As did the trial panel, we find the accused guilty of violating DR 7-102(A)(7).

As noted, the accused does not dispute his guilt with respect to the other three charged violations. The sole

---

[3] Both the accused and Millspaugh knew that personal property was forfeitable, because the accused had represented Millspaugh in an earlier forfeiture case.

remaining question is the sanction to be imposed. The accused is a lawyer with over 18 years of experience, much of it relating to criminal defense. He has had one prior disciplinary offense, which resulted in an admonition. The parties agree that, given the accused's status and the nature of his disciplinary rule violations, some period of suspension is appropriate. The accused states that he will accept that imposed by the trial panel — suspension for 120 days. The Bar, however, argues for a longer period of suspension.

The substantive charges against the accused are very serious.[4] The accused's acts placed a potential and wholly illegitimate roadblock in the way of Multnomah County's right to seek forfeiture of property used in the commission of a crime, as well as creating a way by which a potential criminal defendant could have a "leg up" in concealing personal property that also might be subject to forfeiture. The acts also required a separate legal action to clear them up.

In addition, the potential impact of the accused's conduct on the criminal justice system was not trivial. There can be no doubt that the accused created a barrier to forfeiture of both Millspaugh's real and personal property. That was a significant and ongoing potential for harm to the criminal justice system.

Each party relies on several cases that are asserted to be analogous to the present one. The range of sanctions encompassed by those cases is large. *Compare, e.g., In re Hockett, supra* (fraudulent transfers from husbands to wives; 63-day suspension) and *In re Dinerman, supra* (knowingly making false statements to assist client in obtaining loan from bank; 63-day suspension) *with, e.g., In re Willer*, 303 Or 241, 735 P2d 594 (1987) (false reports to client; 30-month suspension); *In re Hedrick*, 312 Or 442, 822 P2d 1187 (1991) (false statement in will petition; two-year suspension). We do not believe that this is the case in which to try to harmonize

---

[4] The accused's failure to cooperate with the Bar's investigation involved delay in answering the Bar's initial inquiry. Once engaged in the process, however, the accused was cooperative and forthcoming. The failure to cooperate does not appear to have been extensive or aggravated, and the accused offers a plausible explanation (although not an excuse) for the delay. Given the relative seriousness of the accused's other violations of the disciplinary rules, we do not find that the accused's failure to cooperate requires a separate sanction. We therefore do not discuss it further.

the sanction imposed in every case even arguably analogous to the present one.

When all the foregoing considerations are taken into account, we conclude that the suspension warranted by the accused's conduct is six months. It is so ordered.

The accused is suspended from the practice of law for a period of six months commencing on the effective date of this decision.